# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA,    )
)
)
v.    )     Case No. CR408-081
)
ANTHONY McNICOLL and    )
RICHARD SALMON,    )
)
      Defendants.    )

## REPORT AND RECOMMENDATION

Defendants, who are charged with possession with intent to distribute methylenedioxyethamphetamine (or "ecstasy"), have filed a motion to suppress evidence seized during their arrest. (Doc. 34.) Defendant McNicoll also seeks to suppress a statement made after his arrest. (Id.) During the evidentiary hearing held on July 24, 2008, the government offered testimony from two deputy sheriffs of the Bryan County Sheriff's Department, Deputy David Blige and Deputy Robert Crapse. Neither defendant testified. For the following reasons, defendants' motion to suppress the evidence

seized from their vehicle should be **DENIED**. McNicoll's motion to suppress his statement should be **GRANTED**.

On April 9, 2008, while traveling southbound on I-95, Deputy David Blige observed a silver Lincoln cross the solid white line into the emergency lane "a couple of times" in violation of Georgia's improper lane usage law. O.C.G.A. § 40-6-34. He activated his emergency equipment and conducted a traffic stop at mile marker 80. Blige approached the driver and asked him to exit the vehicle and step to the rear with his driver's license. The driver complied, producing a Canadian driver's license which identified him as Anthony McNicoll. After Blige explained the reason for the stop, McNicoll stated that he had been talking to his passenger and was not paying attention to the roadway. When asked about his travel plans, McNicoll responded that he was traveling from Canada to Ocala, Florida to visit friends for about two to four days. Blige then went to the passenger side of the vehicle and asked the passenger for his identification. The passenger responded that he did not have any identification but stated that his name was Richard Salmon. In response to Blige's question about his travel plans,

Salmon said that he was traveling from New York to Clearwater, Florida to visit his girlfriend for two days. He further stated that he had borrowed the vehicle from his other girlfriend in New York. Blige noticed that McNicoll appeared to be exceedingly nervous.

Upon returning to his patrol car, Blige asked the sheriff's department's dispatcher to run a license and EPIC[1] check on the driver and vehicle. The dispatcher soon reported a preliminary finding that the vehicle driver was the subject of an arrest warrant from Jamaica. While awaiting the results of the rest of the computer check, Blige radioed Deputy Robert Crapse and requested that he meet him at the traffic stop so that Crapse's canine partner,

---

[1] EPIC, an acronym for the El Paso Intelligence Center, is a compilation of computer databases from various law enforcement agencies that monitors travel across the United States border, provides records on driver's licenses, and centralizes intelligence information about vehicles (and other conveyances) suspected of being involved with drug trafficking. United States v. Urrieta, 520 F.3d 569, 571 (6th Cir. 2008); United States v. Guerrero, 374 F.3d 584, 587 n.3 (8th Cir. 2004); United States v. Doggett, 906 F.2d 573, 575 n.3 (11th Cir. 1990), rev'd on other grounds, 505 U.S. 647 (1992); United States v. $189,825, 8 Supp. 2d 1300, 1305 n.6 (N.D. Okla. 1998).

A law enforcement officer conducting a traffic stop is entitled not only to run a license and registration check but also to conduct a contemporaneous criminal history check on the driver, so long as the computer check does not unreasonably prolong the stop. United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001) ("The request for criminal histories as part of a routine computer check is justified for officer safety."). There is no contention that the traffic stop in this case was unreasonably prolonged. See id. at 1279 ("fourteen minutes is not an unreasonable amount of time for a traffic stop").

Seppe, could sniff the vehicle for the odor of drugs. Deputy Crapse arrived at the scene between seven and nine minutes after the initial stop and led his dog around the vehicle while Blige was still in his patrol car awaiting the results of the computer check. Seppe alerted on the vehicle. The deputies ordered both men to step out of the vehicle while Deputy Crapse conducted a search. Inside the trunk Crapse found a black gym bag that contained a large amount of separately bagged ecstasy pills. Upon finding the drugs, the officers arrested both men. When Blige asked who owned the gym bag and contraband, McNicoll replied that they were his.

During the evidentiary hearing, defendants conceded that the deputies had probable cause to conduct a traffic stop. They deny, however, that the officers had probable cause to search their vehicle.[2] Their argument is utterly meritless. The Eleventh

---

[2] While McNicoll was driving a borrowed car, a bailee has a sufficient privacy interest in a borrowed vehicle to challenge its search during a roadside stop. United States v. Miller, 821 F.2d 546, 548-49 (11th Cir. 1987); United States v. Ponce, 8 F.3d 989, 994 (5th Cir. 1993). Mere passenger status, however, is generally insufficient to confer standing to challenge the search of a vehicle that has been subjected to a lawful traffic stop. Rakas v. Illinois, 439 U.S. 128 (1978). In this case, there is some evidence that it was Salmon (the passenger) not McNicoll (the driver) who had borrowed the car. In any event, the government does not contest either defendant's standing to challenge the search of the vehicle.

Circuit has recognized that a dog sniff during a traffic stop "does not qualify as a search for Fourth Amendment purposes," United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997), and "that probable cause arises when a drug-trained canine alerts to drugs." United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993). Here, while a routine traffic stop was in progress, Deputy Crapse's canine partner alerted to the presence of drugs. Crapse testified that he had participated in a 160-hour training course with Seppe and that the dog had demonstrated a ninety-five percent accuracy rating in narcotics detection during his training.[3] The dog's alert, combined

---

[3] Deputy Crapse testified that he has been working with Seppe for about four months at the time of the stop and during that time he had occasion to use Seppe about 30 times. He conceded that on 25 of those occasions Seppe alerted on vehicles that, when searched, were found not to contain illicit drugs. He explained, however, that his dog is trained to detect the odor of drugs, and that the absence of drugs in a vehicle at the time it is searched does not mean that drugs had not previously been present in that vehicle or that the vehicle occupants had not recently been exposed to drugs. Indeed, he testified that "most of the time" when the dog gave a false-positive alert, a vehicle occupant would admit that he or a previous occupant had recently used marijuana or some other drug, thus confirming Seppe's accuracy and the sensitivity of his nose. The fact that Seppe demonstrated a 95% success rate during his training period—when the presence or absence of drugs could be carefully controlled—is the best measure of his skills and reliability. Given this evidence, and Deputy Crapse's explanation for his dog's high number of false positives during a four-month period, the Court finds that Seppe's alert established probable cause. See United States v. Campos, 237 F. App'x 949, 954 (5th Cir. 2007) (upholding reliability finding where district court found that one out of three of the dog's false alerts were reasonably explained away by the handling officer); United States v. Donnelly, 475 F.3d

5

with McNicoll's excessive nervousness, defendants' inconsistent stories about their destination, and McNicoll's fugitive status, furnished probable cause to search defendants' vehicle. See United States v. Ross, 263 F.3d 844, 846 (8th Cir. 2001) (upholding probable cause determination where uncertified canine alerted to

---

946, 955 (8th Cir. 2007) (noting that canine's field "record is only one of the factors we consider in the totality of the circumstances calculation" and finding canine reliable despite his 46% false positive record in the field where testimony showed that he had consistent training, was considered competent by independent evaluators, and was properly certified); United States v. Koon Chung Wu, 217 F. App'x 240, 245-46 (4th Cir. 2007) ("We believe that evidence of [the canine's] training and certification was enough by itself to establish [the canine's] reliability so that his positive alerts for controlled substances established probable cause . . . [as] [p]robable cause only requires a 'fair probability' that contraband will be found in a certain place . . .") (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)); United States v. Gregory, 302 F.3d 805, 811 n.7 (8th Cir. 2002) (upholding reliability determination where officer explained that on the occasions when his canine gave false positives he "obtained other evidence that drugs had been in that location a short time before [the dog] searched it"); United States v. Espinoza-Padilla, 42 F.3d 1403, at *2 (9th Cir. 1994) (finding probable cause based on "the totality of the circumstances (the dog alert, the location of the compartment, the heightened nervousness of the defendant during the dog sniff, as well as the reliability of the dog based on its past statistics and certification history)" despite fact that out of 30 to 40 alerts, hidden persons or drugs were only found about 20 times); United States v. Nelson, 2008 WL 345605, at *3 (M.D. Ga. Feb. 6, 2008) (finding canine alert sufficiently reliable to establish probable cause based on testimony that, one month prior to the search, the officer and canine had completed a week long drug detection training course, received a certificate of completion, and participated in a continuing training program); United States v. Carroll, 537 F. Supp. 2d 1290, 1297 (N.D. Ga. 2008) (where canine had an accuracy rate of 52% his alert was sufficiently reliable to constitute probable cause as it exceeds the "fair probability" requirement of Gates). But if Seppe's high number of false positives persists over an extended period (and there is no evidence the dog has been re-evaluated and recertified), then future alerts by Seppe as a basis for a finding of probable cause might reasonably be questioned.

vehicle, driver resembled the composite sketch of a bank robber, and driver gave inconsistent stories about his destination).

Defendant McNicoll also contends that his post-arrest admission that the gym bag and drugs were his should be suppressed, as the statement was taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966). (Doc. 34 at 6.) The government has conceded that the statement should be suppressed. (Doc. 39 at 10.) Accordingly, McNicoll's motion to suppress his statement should be **GRANTED**.

As defendants have failed to establish any grounds for the suppression of evidence in this case, their motions to suppress evidence should be **DENIED**. Defendant McNicoll's motion to suppress his statement should be **GRANTED**.

**SO REPORTED AND RECOMMENDED** this 1st day of August, 2008.

/s/ G.R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA